**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **SHAWN DUNBAR,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 11-1116-KHV** |
| **GEARY COUNTY BOARD OF COMMISSIONERS, KANSAS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

Shawn Dunbar brings suit against the Board of Commissioners of Geary County, Kansas and Geary County Sheriff James A. Jensen for violation of his Fourth, Fifth and Fourteenth Amendment rights under 42 U.S.C. § 1983 (Count I), and against Geary County Detective Sargeant Sam Niemczyk and five unnamed employees or officers of the Geary County Sheriff's Department for false arrest (Count II), false imprisonment (Count III), malicious prosecution (Count IV), negligent infliction of emotional distress (Count V) and intentional infliction of emotional distress (Count VI). Each count arises from the same alleged conduct: plaintiff alleges that officers of the Geary County Sheriff's Department falsely arrested and imprisoned him on April 27, 2010, in violation of his rights under the Fourth, Fifth and Fourteenth Amendments of the U.S. Constitution. This matter is before the Court on three motions. The first is the Motion To Dismiss (Doc. #8-1) which the Geary County Board of Commissioners ("the County") filed July 21, 2011. The County moves to dismiss plaintiff's complaint because it fails to allege well-pleaded facts under 42 U.S.C. § 1983 that the County failed to hire, retain, supervise or discipline the officers who falsely arrested and imprisoned plaintiff. The second is the Motion To Dismiss (Doc. #12) which James A. Jensen filed July 22, 2011. Jensen moves to dismiss plaintiff's complaint because it is based on his supervisory status and because he is entitled to qualified immunity from liability under 42 U.S.C. § 1983.

The third motion before the Court is plaintiff's Motion For Leave To File Amended Complaint (Doc. #32) filed September 29, 2011. Plaintiff seeks leave to assert claims arising under the Kansas Tort Claims Act and to cure any arguable defects or deficiencies in his original complaint. For the following reasons, the Court overrules the County's motion to dismiss, sustains Jensen's motion to dismiss and sustains plaintiff's motion to amend.

## Legal Standards

In ruling on a motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement of relief. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1950 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible – and not merely conceivable – on its face. Id.; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 129 S. Ct. at 1950.

The Court need not accept as true those allegations which state only legal conclusions. See id.; Hall v. Bellmon, 935 F.3d 1106, 1110 (10th Cir. 1991). Plaintiff bears the burden of framing his complaint with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim when he pleads factual content from which the Court can reasonably infer that defendants are liable for the misconduct alleged. Iqbal, 129 S. Ct. at 1949. Plaintiff must show more than a sheer possibility that defendants have acted unlawfully – it is not enough to plead facts that are "merely consistent with" defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action, or naked assertions devoid of further factual enhancement will not stand. Iqbal, 129 S. Ct. 1949. Similarly, where the well-pleaded facts do not

permit the Court to infer more than the mere possibility of misconduct, the complaint has alleged – but has not "shown" – that the pleader is entitled to relief. Id. at 1950. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008) (quoting Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232-33 (3d Cir. 2008)).

Leave to amend is a matter committed to the sound discretion of the district court. See First City Bank. N.A. v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127, 1132 (10th Cir. 1987). Rule 15(a)(2), Fed. R. Civ. P., provides that leave to amend "should be freely given when justice so requires." A district court should refuse leave to amend only upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed or futility of amendment. Wilkerson v. Shinseki, 606 F.3d 1256, 1267 (10th Cir. 2010). A proposed amendment is futile if the amended complaint would be subject to dismissal. Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007).

## Factual Background

The complaint alleges the following facts.

On April 27, 2010, several police officers from Stillwater, Oklahoma arrived at the residence where Shawn Dunbar had lived for 12 days. In front of his neighbors, the officers pulled Dunbar from his home, frisked and handcuffed him, and arrested him on a Geary County warrant charging him with felony aggravated battery. Doc. #1, Ex. 4. After escorting him to the squad car down the block and around the corner from his house, the officers took Dunbar to the jail in Payne County, Oklahoma. Four days later, Dunbar was transported by van to the Geary County jail, where he remained until his preliminary hearing on August 12, 2010. At the hearing, an Assistant Geary County Attorney dismissed the felony charge against Dunbar with prejudice. Doc. #1, Ex. 6.

In March of 2006, Dunbar had enlisted in the United States Army. Shortly thereafter, he achieved the rank of Specialist. The Army stationed him in the Iraq war zone less than six months later, where he was part of a Route Clearance Squad whose primary purpose was to discover and remove improvised explosive devices ("IEDs"). Dunbar suffers from traumatic brain injury ("TBI") and post-traumatic stress disorder ("PTSD") as a result of the repeated trauma of blast or shock waves from exploding IEDs. He has had trouble finishing his sentences and verbalizing complete thoughts and has experienced crippling headaches, emotional bouts of uncontrollable rage and anger, paranoia, depression and sleepless nights. The Army first moved Dunbar to Germany in October of 2007, for treatment of his TBI and PTSD, and later moved him to Fort Riley in Geary County. Dunbar continued to receive treatment at Fort Riley until the Army granted him honorable medical discharge on February 28, 2009. He returned to Oklahoma and has continued to reside there. The Department of Veterans Affairs has determined that, as of the date of discharge, Dunbar was 80 per cent disabled from combat injuries, primarily due to his TBI and PTSD.

In the summer of 2009, Dunbar began a new relationship and moved into his own residence. His nightmares became less frequent, he started sleeping better, and he no longer felt compelled to retreat to his room with its doors and windows closed to isolate him. By the time of his arrest, Dunbar had learned to sufficiently cope with his PTSD and the effects of his TBI.

On May 8, 2009, Jason Gromlovits attended a small gathering of people at a house in Junction City, Kansas, where he lives. He and a man he did not know began wrestling in a playful manner, but without apparent provocation the man attacked Gromlovits, beating him unconscious and causing numerous skull and facial fractures. Four days later, Gromlovits filed a complaint with the Geary County Sheriff's Department. On May 14, Detective Sergeant Sam Niemczyk interviewed Gromlovits and his girlfriend, Samantha Blaske. The couple described the attacker as

white, about 5'5" to 5'6" tall, with a close-cropped military style haircut and numerous tattoos.[1] Another person who had been at the party later told Niemczyk that the attacker's name was "Dunbar."

On May 15, Niemczyk conducted several computer searches and collected five database reports, four of which were substantive. The reports included the following information:

> 1) An individual named Shawn Dunbar owned a 2002 Jeep titled in Oklahoma. First Bank & Trust Company of Perry, OK had a first lien on the vehicle.
>
> 2) An individual named Shawn James Dunbar lived at 14901 Explorer, Perry, Oklahoma. Shawn James Dunbar is six feet tall, weighs 205 pounds, and has green eyes.
>
> 3) An individual named Shawn James Dunbar had also lived at A CO WTB, Bldg 671F, Fort Riley, Kansas, in Geary County. Shawn James Dunbar is six feet tall, weighs 200 pounds, and has green eyes.
>
> 4) An individual named Shawn Dunbar lived at 415 Walters Dr. #1105, Manhattan, Kansas, and owned a 1997 Jeep with Kansas license plate 590BCJ. Beth Dunbar was listed as co-owner of the 1997 Jeep.
>
> 5) The Riley County Police Department database had no information about Shawn Dunbar.

The Geary County Sheriff's Department made no attempt to locate the Shawn Dunbar who lived in Manhattan or to identify or contact Beth Dunbar. Officers conducted two additional witness interviews and re-interviewed Gromlovits. The day before Niemczyk conducted the computer search, an unknown officer or employee obtained a sworn statement from eyewitness Johnny Megaha but did not ask Megaha to provide a physical description of the attacker. Niemczyk interviewed Brian Gasswint on May 18 but did not ask him if the attacker was six feet tall and 200 pounds; indeed, he did not ask Gasswint to describe the attacker at all. Three days later, Sergeant James Cotton re-interviewed Gromlovits and obtained a sworn handwritten statement. The statement contains no physical description of the attacker.

---

[1] Plaintiff is 5'10" tall.

Although Niemczyk and/or other officers had a photograph of plaintiff, they never showed it to Gromlovits or any other witness. Nor did they use the photograph to conduct a photographic lineup for any witness. Nevertheless, Niemczyk and/or other Sheriff's Department officials told Assistant County Attorney Lloyd Graham that Gromlovits and an eyewitness identified plaintiff from a photographic lineup. Doc. #1, Ex. 3. The Affidavit/Narrative reports from the Sheriff's office make no mention of two Shawn Dunbars, nor do they include the physical description of the attacker that Gromlovits and Blaske provided. Doc. #1, Ex. 2. On June 9, 2009, the Geary County District Court charged plaintiff with felony aggravated battery and issued a warrant for plaintiff's arrest. Doc. #1, Ex. 1.[2] The Geary County Sheriff's Department took no further action until shortly before April 27, 2010, when it sent the warrant to the Stillwater Police Department. Doc. #1, Ex. 4.

Following plaintiff's arrest, the Payne County jailers handcuffed him to a bench in the jail and left him alone for at least two hours. They later fingerprinted and photographed him, conducted a full strip search including an anal cavity search, and seized his clothing and personal possessions. Plaintiff remained at the Payne County jail for four nights, during which time he was without the support of his healthcare providers, family, friends and fiancee. He did not receive his prescription medication for his PTSD and TBI, which aggravated his fear, anxiety, trauma and mental suffering. On May 1, jail guards removed plaintiff from his cell and placed him in a van for an eight-hour ride to Junction City, Kansas. He was handcuffed, shackled and chained to other prisoners for the ride. Geary County Jail employees processed plaintiff into the Geary County jail. They too conducted a strip search. Late that day, plaintiff gained his release to his fiancee and family on $5,000 bail.

Two days later, plaintiff's counsel sent Niemczyk documents showing that plaintiff was in

---

[2] Curiously, the warrant charges two assaults on Gromlovits – one on May 9 and another on May 12. No record exists of a second assault.

Oklahoma on May 8 and 9, 2009, when he had allegedly assaulted Gromlovits. He sent copies of plaintiff's bank statements which showed use of his bank card in and around Stillwater, Oklahoma multiple times on May 8 and 9. He also sent written statements from two individuals who claimed to have been with plaintiff from the evening of May 8 and into the early hours of May 9. Niemczyk reviewed the documents and concluded that he could not "confirm or deny that Shawn Dunbar was in the Stillwater, Oklahoma area on the date(s) in question, May 8-9, 2009." Doc. #1, Ex. 5. Graham, the assistant county prosecutor, told plaintiff's counsel that he would not dismiss the charges based on Niemczyk's conclusion. Moreover, Graham said that witnesses had participated in a photographic lineup and had identified plaintiff as the attacker.

On August 12, 2010, the Geary County District Court conducted a preliminary hearing on the assault charge against plaintiff. Dunbar's fiancee, family and witnesses attended to testify that he had been in Stillwater on May 8 and 9, 2009. Gromlovits and his girlfriend Blaske also attended. Before the hearing began, Graham asked Gromlovits and Blaske if plaintiff was the person who assaulted Gromlovits. Both were adamant that he was not. Graham then asked them about having identified plaintiff in a photo lineup. Both replied that they had never been asked to identify anyone, they saw no photo lineup, and they had not looked at a photo of plaintiff. Graham immediately dismissed the matter and the court entered a dismissal with prejudice.

Plaintiff asserts that he suffered damages as a direct and proximate result of his arrest, imprisonment, transport to another state and four months of living with a baseless felony charge. He asserts that he had a relapse in his TBI and PTSD recovery along with severe mental anguish, confusion and paranoia, insomnia, debilitating headaches, many angry and violent outbursts, severe depression and panic and anxiety attacks. Plaintiff also alleges that defendants' actions rendered him ineligible to continue receiving his Veterans Administration disability benefits, along with medical and psychological care and treatment for his PTSD. He also suffered pecuniary damages

including lost time, attorneys' fees and bail expenses. Finally, he asserts that he will continue to experience pain and suffering, mental distress and anguish.

In his amended complaint, plaintiff seeks to add state law claims against the County, Jensen and Neimczyk that arise under the Kansas Tort Claims Act, including an allegation that the County is vicariously liable for the claims stated in Counts II, III, IV and VI. He also includes more factual allegations as to his claims under 42 U.S.C. § 1983, and adds a state law claim (Count VII) against Jensen for negligent training, supervision and discipline of Geary County Sheriff's Department officers.

## Analysis

The County asserts that Count I fails to state a claim under 42 U.S.C. § 1983 because it does not contain well-pleaded facts concerning the County's alleged failure to properly hire, train, instruct, supervise or discipline members of the Investigation Division of the Geary County Sheriff Department. Plaintiff disputes the argument[3] and attempts to overcome any such shortcoming through his proposed amended complaint. A municipality such as the County may be held liable under Section 1983 if a plaintiff can show (1) the existence of a municipal policy or custom, and (2) a direct causal link between the policy or custom and the constitutional deprivation.[4] Hinton v. City

---

[3] In his response, plaintiff discusses his allegations of failure to train, instruct, supervise and discipline. He does not include failure to properly hire, and thus the Court concludes that he makes no claim under that theory.

[4] Section 1983 provides in part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

(continued...)

of Elwood, 997 F.2d 774, 782 (10th Cir. 1993).

Jensen asserts that Count I fails to state a claim for individual liability against him under Section 1983 because plaintiff alleges failure to supervise instead of personal involvement, and because he is entitled to qualified immunity. Under Section 1983, a defendant sued in an individual capacity may be subject to personal liability and/or supervisory liability. Personal liability "under § 1983 must be based on personal involvement in the alleged constitutional violation." Brown v. Montoya, 662 F.3d 1152, 1163 (10th Cir. 2011); Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). On the other hand, supervisory liability allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates or implements a policy which subjects, or causes plaintiff to be subjected, to the deprivation of any rights secured by the Constitution. Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010), cert. denied, 131 S. Ct. 2150 (2011). In the face of a qualified immunity defense, plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right that was clearly established at the time of the violation. Peterson v. Jensen, 371 F.3d 1199, 1202 (10th Cir. 2004).

## I. Motion For Leave To Amend

In his original complaint, plaintiff states that he intended to assert claims against the County pursuant to the Kansas Tort Claims Act, K.S.A. §§ 75-6101-6120, but those claims were not ripe because the County had yet to deny his notice of claim, and 120 days had not passed since he served the County with notice of the claim. Doc. #1, ¶¶ 3, 4. He filed his complaint without including those claims because he arguably faced a soon-to-expire statute of limitations on his state law causes of action. He therefore expected to and ultimately did file a motion for leave to amend his complaint

[4](...continued)
42 U.S.C. § 1983.

(Doc. #32) on Sept. 29, 2011. In his proposed amended complaint, plaintiff adds the claims he had described, but he also provides additional factual detail to support the claims in his original complaint.

The County and Jensen argue that the Court should deny plaintiff leave to amend because the additional language states a new theory of liability. Moreover, defendants assert that the addition would not cure plaintiff's deficiency in pleading Section 1983 liability, thus rendering the amendment futile. See Anderson v. Suiters, 499 F.3d 1228, 1238 (10th Cir. 2007) (proposed amendment futile if amended complaint subject to dismissal). Finally, defendants argue that plaintiff's newly asserted claims under the Kansas Tort Claims Act also are futile because the County and Jensen are immune from suit under the discretionary function exception to the Act.

Leave to amend is a matter committed to the sound discretion of the district court. See First City Bank. N.A. v. Air Capitol Aircraft Sales, Inc., 820 F.2d 1127, 1132 (10th Cir. 1987). The Court concludes that plaintiff has not amended his complaint beyond what Rule 15 contemplates; his allegations are confined to the same core events, he does not plead new theories of recovery and defendants are not prejudiced by the amended language. The discussion below refutes defendants' argument that plaintiff's amended Section 1983 claim should be rejected as futile. As for the argument that the County and Jensen are immune from suit under the discretionary function exception to the Kansas Tort Claims Act, the Court is mindful that the Kansas Supreme Court has declared that the Act takes an "open-ended approach" to governmental liability where "liability is the rule while immunity the exception." Jackson v. City of Kansas City, 235 Kan. 278, 286, 680 P.2d 877, 886 (Kan. 1984). The Kansas Supreme Court has consistently recognized that the discretionary function exception does not apply where there is a clearly defined mandatory duty or guideline, which can arise from agency directives, case law or statutes. Soto v. City of Bonner Springs, 291 Kan. 73, 80, 238 P.3d 278, 283 (Kan. 2010). Plaintiff alleges that the County is

vicariously liable for conduct by Niemczyk and other Sheriff's Department employees, and that Jensen failed to properly train and supervise his deputies in constitutionally required standards of probable cause and arrest. These allegations are supported by numerous factual allegations concerning information that Niemczyk and others possessed but ignored as they proceeded toward plaintiff's arrest, as well as Niemczyk's inaccurate statement that witnesses had identified plaintiff in a photographic lineup. Accordingly, defendants cannot currently meet the burden of establishing governmental immunity under the discretionary function exception. See Haehn v. City of Hoisington, 702 F. Supp. 1526, 1533 (D. Kan. 1988).

Defendants' arguments are not persuasive under the standard of Rule 15(a)(2). Plaintiff is granted leave to amend his complaint.

**II. Plaintiff's Section 1983 Claim Against The County**

A local government entity may be liable under Section 1983 if it subjects a person to a deprivation of rights or causes a person to be subjected to such deprivation. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978). Under Section 1983, local governments are responsible only for their own illegal acts. Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986) (citing Monell, 436 U.S. at 665-83). They are not vicariously liable under Section 1983 for acts by employees. See Monell, 436 U.S. at 691. To impose liability on the County under Section 1983, plaintiff must prove that "action pursuant to official municipal policy" caused plaintiff's injury. See Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011); Monell, 436 U.S. at 691. A municipal policy or custom may exist in one of several forms. It may be (1) a formal regulation or policy statement; (2) an informal custom created through a widespread practice that although not expressly authorized, is so permanent and well-settled that it constitutes a custom or usage with the force of law; (3) decisions by employees who have final policymaking authority; (4) ratification by such policymakers of decisions (including the basis therefor) of subordinates to whom policymakers delegated authority,

subject to review and approval; or (5) failure to adequately train or supervise employees, if the failure "results from deliberate indifference to the injuries that may be caused." Bryson v. City of Oklahoma City, 627 F.3d 784, 788 (10th Cir. 2010), cert. denied, 131 S. Ct. 3030 (2011) (citations omitted).

Without so stating, plaintiff seems to rely on the third and last of these potential grounds for municipal liability. Plaintiff asserts that the County is liable under Section 1983 for Jensen's failure to train and supervise Niemczyk and other officers, and seems to argue that the reason is that Jensen is the official policymaker for the County in this realm. However, plaintiff also lists a number of specific factual allegations intended to establish that his injuries did not result from a single act of one particular officer who may have been unsatisfactorily trained. Rather, he sets forth the individual acts that, building one upon the next, allegedly collectively resulted in the officers' failure to gather and report basic, material information relevant to whether probable cause existed to arrest plaintiff for assault.[5] Plaintiff alleges that Niemczyk and other officers misrepresented and omitted material facts when they sought an arrest warrant for plaintiff, including (1) failing to disclose the physical description of the attacker as provided by Gromlovits and Blaske that is materially distinguishable from plaintiff's physical characteristics; (2) failing to disclose information clearly showing that another person named "Shawn Dunbar" lived in the Manhattan, Kansas area while plaintiff lived in Oklahoma; (3) failing to disclose that Gromlovits, Blaske and other witnesses had made no photographic identification of plaintiff as the attacker; and (4) falsely representing that Gromlovits, Blaske or other witnesses had in fact identified plaintiff as the attacker from a photographic lineup. Doc. #1 ¶ 56. Plaintiff also alleges that Niemczyk has "regularly and

---

[5] Plaintiff's complaint goes beyond probable cause to arrest. He alleges that Jensen failed to properly train and supervise Niemczyk and other officers in probable cause determinations, issuance of arrest warrants, initiation of felony charges and prosecutions, and detention and imprisonment of arrestees. Doc. #1 ¶¶ 66, 67.

continually" failed to properly perform his duties, yet the County and Jensen did not discipline or discharge him. Id. ¶ 64.

In his proposed amended complaint, plaintiff elaborates on the allegation that Niemczyk has regularly and continually failed to properly perform his duties. He asserts that his allegations are based on representations the Geary County Counselor made to plaintiff's counsel that the Sheriff's Department has had similar problems with Niemczyk in the past. He further alleges that Niemczyk and others working on the case failed to satisfy minimum due process and probable cause requirements. Doc. #32-1 ¶ 69. As a consequence, the County and Jensen knew or should have known that Niemczyk has regularly and continually failed to properly perform his duties, and that Niemczyk and other employees needed additional training and supervision. Id. ¶ 70.

To survive the County's motion to dismiss, plaintiff must allege sufficient facts for this Court to reasonably infer that the County and Jensen implemented or executed policies or customs that led directly to plaintiff's allegedly wrongful arrest, detention and charges, and that such policies or customs have a direct causal relationship with plaintiff's alleged injuries. Olmo-Artau v. Farr, 2011 WL 6150645, at *2 (D. Kan. Dec. 12, 2011). The allegation that every officer involved in the investigation failed to secure and report accurate and necessary information to establish a constitutional and legal basis for plaintiff's arrest and subsequent treatment leaves the inference that their actions were the result of an official custom or practice, administered and endorsed by Jensen, of failure to train and supervise officers. Accordingly, the County's motion to dismiss is overruled.

## III. Plaintiff's Section 1983 Claim Against Jensen

Jensen argues that he is not amenable to plaintiff's Section 1983 claim because the complaint alleges liability based solely on his supervisory status and does not allege that he was personally involved in the misconduct giving rise to plaintiff's claims. Jensen also claims qualified immunity.

Absent an underlying constitutional violation, plaintiff cannot assert a supervisory liability

claim. See Fogarty v. Gallegos, 523 F.3d 1147, 1162 (10th Cir. 2008) (supervisory liability requires constitutional deprivation linked to supervisor's personal participation); see also Christensen v. Big Horn Cnty. Bd. of Cnty. Comm'rs, 374 Fed. Appx. 821, 827 (10th Cir. 2010) (absent underlying constitutional violation, sheriff and county commissioners cannot be held derivatively liable); Martinez v. Beggs, 563 F.3d 1082, 1091-92 (10th Cir. 2009) (where individual county defendants did not violate jail inmate's constitutional rights, sheriff not liable as a matter of law for policy, training or supervision). Accordingly, plaintiffs' claims for failure to train or supervise are limited to the potential underlying constitutional violations by Niemczyk and other officers involved in plaintiff's arrest.

Section 1983 does not authorize liability under a theory of respondeat superior. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). To establish supervisory liability, plaintiffs must establish that (1) defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy, (2) the policy caused the alleged constitutional harm, and (3) defendant acted with the state of mind required to establish the alleged constitutional deprivation. Dodds v. Richardson, 614 F.3d 1185, 1199 (10th Cir. 2010).

Jensen argues that plaintiff has not alleged sufficient facts as to causation (Jensen's personal involvement) or state of mind. Plaintiff concedes that he has not set forth facts to support his allegations that Niemczyk had previously failed to properly perform his duties and that Jensen failed to supervise and discipline him, and he makes no argument as to the other officers' conduct. Plaintiff responds to Jensen's state of mind argument by asserting that the allegations in his complaint make it plausible to infer that Jensen was deliberately indifferent to the prospect that plaintiff's constitutional rights were violated. In other words, plaintiff does not point to facts that meet either element.

To satisfy the element of causation, plaintiff must show an affirmative link between the

constitutional deprivation and the supervisor's personal involvement. Id. at 1200-01; see Barrett v. Orman, 373 Fed. Appx. 823, 826 (10th Cir. 2010); Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009). To do so, plaintiff can show that defendant set in motion a series of events that he knew or reasonably should have known would cause others to deprive plaintiff of his constitutional rights. Dodds, 614 F.3d at 1195-96. Plaintiff does not explain how Jensen was personally involved in the alleged deficiencies in the training program or how those deficiencies are related to the alleged constitutional violations by Niemczyk and other officers. The potential constitutional violations by the officers involve failure to properly investigate, determine probable cause, issue a warrant, and initiate a felony charge and prosecution against plaintiff. Plaintiff has not presented sufficient factual allegations to demonstrate an affirmative link between Jensen's involvement in training and supervising and any indifference to plaintiff's constitutional rights by sheriff's department officers.

As to state of mind, plaintiff has not alleged facts sufficient to show that Jensen acted with deliberate indifference. Plaintiff must establish that Jensen acted knowingly or with deliberate indifference that a constitutional violation would occur. Id. at 1196. Plaintiff has not alleged that Jensen had any contact with plaintiff or that Jensen knew that officers were failing to properly investigate and determine probable cause for plaintiff's arrest. Plaintiff cannot maintain a Section 1983 claim for supervisory liability by asking the Court to accept a plausible inference of no training or insufficient training, which in turn suggests deliberate indifference. In arguing in favor of his amended complaint, plaintiff offers nothing more than the same "plausible inference." Doc. #36 at 11.

The Court concludes that the complaint fails to state a Section 1983 claim against Jensen because plaintiff does not sufficiently allege Jensen's personal involvement.[6]

---

[6] The Court therefore need not reach Jensen's argument that he is entitled to qualified (continued...)

**IT IS THEREFORE ORDERED** that the Motion To Dismiss Of Defendant Board Of County Commissioners Of Geary County, Kansas (Doc. #8-1) filed July 21, 2011, be and hereby is **OVERRULED**.

**IT IS FURTHER ORDERED** that the Motion To Dismiss Of Defendant James A. Jensen (Doc. #12) filed July 22, 2011, be and hereby is **SUSTAINED**. Count I of plaintiff's Complaint (Doc. #1) is dismissed as to defendant James A. Jensen.

**IT IS FURTHER ORDERED** that Plaintiff's Motion For Leave To File Amended Complaint (Doc. #32) filed September 29, 2011, be and hereby is **SUSTAINED**. On or before **March 9, 2012,** plaintiff shall file his amended complaint.

Dated this 28th day of February, 2012 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge

[6](...continued)
immunity.